UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| SECURIAN LIFE INSURANCE COMPANY,<br><br>    Plaintiff,<br><br>v.<br><br>MERCEDES S. MCALISTER; DEBRA A. MCALISTER; KEITH MCALISTER; KYLE MCALISTER; RACHEL MCALISTER; DEREK MCALISTER; R. MCALISTER, a minor, by and through her guardian ad litem; and TRIBUTE INSURANCE ASSIGNMENTS, LLC,<br><br>    Defendants. | Case No. 6:24-cv-00161-MTK<br><br>**OPINION AND ORDER** |

**KASUBHAI,** United States District Judge:

Securian Life Insurance Company ("Securian") filed a Complaint for Interpleader Relief to resolve competing claims to a life insurance policy by Defendants Mercedes S. McAlister ("MM") and Debra A. McAlister ("DM"), along with her minor child, R. McAlister ("RM"). Each Defendant has filed cross-claims and motions for summary judgment. Under Fed. R. Civ. P. 56. Mot. For Summ. J. (ECF No. 63) ("MM's Mot."), Counter Mot. For Summ. J. Mot. (ECF No. 64) ("DM's Cross-Mot."). For the reasons explained below, DM's Cross-Motion is GRANTED, and MM's motion is DENIED.

Page 1 — OPINION AND ORDER

## BACKGROUND

Kenneth McAlister ("Mr. McAlister") died on June 11, 2023. MM's Mot., Ex. 1 (ECF No. 63-1). Prior to his death, Mr. McAlister participated in a group life insurance policy sponsored by his employer, Ryder Transportation Co., and administered by Securian (the "Securian Plan"). The Securian Plan is subject to the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq*. ("ERISA"), discussed below. Mr. McAlister's coverage under the Securian Plan began January 1, 2023. MM's Supp. (ECF No. 68) ("Ex. 9"). At the time of his death, the proceeds of the policy amounted to $59,000.00. The Securian Plan listed MM as the named beneficiary, and so she submitted a claim to Securian for the proceeds. DM, who was formerly married to Mr. McAlister, submitted a separate claim on behalf of their minor daughter, RM. DM asserted a right to the proceeds under the terms of a 2019 Stipulated General Judgment of Dissolution of Marriage Money Award ("SGJ"), which formalized the McAlisters' divorce. MM's Mot., Ex. 2 (ECF No. 63-2.) ("SGJ").

The SGJ ordered Mr. McAlister to make monthly child support payments until each child turned eighteen years old, or if the child was still in school, then until she turned twenty-one years old. SGJ at 6. Mr. McAlister was required to "obtain and maintain a life insurance policy on [his] life with face value coverage of not less than $100,000.00 in full force and effect naming the child or children as primary beneficiary or beneficiaries." *Id*. at 7-8. He was required to maintain the life insurance policy "until all child support under this Judgment has been fully paid[.]" *Id.* at 7. The SGJ also stated that "[a] constructive trust is imposed over the proceeds of any insurance owned by [Mr. McAlister] at the time of [his] death . . . if said insurance is in force, but another beneficiary is designated to receive said funds." *Id.* at 8.

In the face of MM and DM's competing claims, Securian filed a Complaint for Interpleader Relief pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1335, and Fed. R. Civ. P. 22. Pl.'s

Compl. for Interpleader Relief (ECF No. 1) ("Pl.'s Compl."). Both Defendants filed answers with cross-claims. Securian asserts no beneficial interest in the proceeds. The Court granted Securian's motion to deposit the amount remaining of the life insurance proceeds plus interest ($53,307.15) with the Court and discharged Securian from this action. *See* Order & J. of Discharge & Order to Deposit Funds (ECF No. 56).

## STANDARDS

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file, if any, show "that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Substantive law on an issue determines the materiality of a fact. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party determines the authenticity of the dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324.

Special rules of construction apply when evaluating a summary judgment motion: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *T.W. Elec. Service, Inc.*, 809 F.2d at 630.

**DISCUSSION**

MM moves for a declaratory judgment that she is entitled to priority of the life insurance proceeds because she is the policy's designated beneficiary. DM moves for a declaratory judgment that she, as legal guardian of RM, is entitled to a portion of the life insurance proceeds to provide child support for RM, as mandated by the SGJ. For the reasons explained below, the Court finds that the SGJ is a Qualified Domestic Relations Order ("QDRO") which triggers the exception to the anti-assignment provision of ERISA, elevating Mr. McAlister's child support obligations above MM's designated beneficiary status.[1]

**I.    Statutory Background**

Congress enacted ERISA "to protect participants in private employee benefit plans." *In re Gendreau*, 122 F.3d 815, 817 (9th Cir. 1997). In pursuit of this goal, ERISA prohibits the assignment or alienation of these benefit plans. 29 U.S.C. § 1056(d)(1). Separately, ERISA also broadly preempts state law affecting employee benefit plans. 29 U.S.C. § 1144(a). The interaction of these two concepts—ERISA preemption and its anti-assignment provisions—presented the question: did ERISA preempt a state court's domestic relations order that purported to reassign benefits? *Stewart v. Thorpe Holding Co. Profit Sharing Plan*, 207 F.3d 1143, 1149 (9th Cir. 2000).

---

[1] DM's attorney stipulates that the SGJ is not a QDRO. DM's Cross-Mot. at 6. DM's attorney then misstates the implications of that stipulation, arguing that if the SGJ "is not a [QDRO] . . . the anti-alienation provision prohibits elimination of a former spouse's interest, and [the] proceeds should be awarded to [DM] and [RM] as requested. DM's Cross-Mot. at 11. However, the opposite is true. If the SGJ is a QDRO, then the exception to ERISA's anti-assignment provision applies, and DM may be entitled to proceeds from the insurance plan on RM's behalf. Whether a domestic relation order is a QDRO is a legal matter. *See Stewart v. Thorpe Holding Co. Profit Sharing Plan*, 207 F.3d 1143, 1153 (9th Cir. 2000) (courts must determine whether a domestic relations order substantially complies with ERISA's statutory requirements). This Court is not bound by the parties' stipulation which is based, in part, on a fundamental misconception of ERISA.

In 1984, Congress made clear that it did not and "resolved any uncertainty" by passing the Retirement Equity Act of 1984 ("REA"), 26 U.S.C. § 417. *Id*. "The REA amended ERISA by creating an exception to its anti-assignment provisions for state 'domestic relations orders' (commonly known as marriage dissolution orders) that meet the requirements of a 'qualified domestic relations order' or QDRO." *Id.* As amended, ERISA's broad preemption clause does not apply to QDROs as defined in 29 U.S.C. § 1056(d), explained below. 29 U.S.C. § 1144(b)(7). A QDRO therefore has the effect of "elevat[ing] a plan participant's legal obligations, commonly to a former spouse or children of a previous marriage, over the participant's express wishes to provide for other individuals as designated beneficiaries." *Trs. Of the Dirs. Guild of Am.-Producer Pension Benefits Plans v. Tise*, 234 F.3d 415, 425 (9th Cir. 2000).

QDROs are any orders relating "to the provision of child support, alimony, or marital property rights to a spouse, former spouse, child, or other dependent of a plan participant . . . made pursuant to a State domestic relations law." 29 U.S.C. § 1056(d)(B)(3)(ii). To qualify, a QDRO must specify:

> (i) the name and the last known mailing address (if any) of the participant and the name and mailing address of each alternate payee covered by the order,
>
> (ii) the amount or percentage of the participant's benefits to be paid by the plan to each such alternate payee, or the manner in which such amount or percentage is to be determined,
>
> (iii) the number of payments or period to which such order applies, and
>
> (iv) each plan to which such order applies.

29 U.S.C. § 1056(d)(3)(C). Furthermore, a QDRO must not "require the plan to provide increased benefits (determined on the basis of actuarial value)." *Id*. § 1056(d)(3)(D)(ii).

The specificity requirements of § 1056 serve a practical purpose: Congress was "concerned with reducing the expense to plan providers and protecting them from suits for making improper payments." *In re Gendreau*, 122 F.3d at 817; *Carmona v. Carmona*, 603 F.3d 1041, 1054 (9th Cir. 2010). While specificity is required, "[t]he pivotal question is whether the [order] 'clearly contains the information specified in the statute that a plan administrator would need to make an informed decision.'" *Hamilton v. Washington State Plumbing & Pipefitting Indus. Pension Plan*, 433 F.3d 1091, 1097 (9th Cir. 2006) (quoting *Stewart*, 207 F.3d at 1154). Congress' intention in enacting the QDRO provisions was to "mitigate the impact of divorce upon children and former spouses" by requiring that preexisting obligations under domestic relations orders be upheld. *Tise*, 234 F.3d at 425. As such, a domestic relations order ("DRO") that "substantially complies" with the requirements of § 1056 qualifies as a QDRO. *Id.* at 420.

Thus, a threshold issue in this case is whether DM's SGJ is a QDRO; if it is, then it takes precedence over MM's designated beneficiary status in the Securian Plan.

## II.     The SGJ is a QDRO

MM contends that DM's SGJ does not satisfy the QDRO requirements. The Court finds that DM's SGJ is a QDRO because it substantially complies with the requirements of § 1056(d)(3)(C). Each statutory requirement at issue is discussed in turn.

The first statutory requirement is that the DRO specify the name and the last known mailing address of the participant and of the alternate payee(s) covered by the order. 29 U.S.C. § 1056(d)(3)(C)(i). Here, the SGC specifies the name and last known mailing address of the plan participant, Mr. McAlister. Regarding the payee, the SGJ awards physical custody of RM (as a minor child) to both parents. The names and addressed of RM's parents, Mr. McAlister and DM, are listed throughout the SGJ. *See* SGJ at 14-16. As RM's parents, these addresses aid in the identification of the payee. The SGJ also includes RM's full name and age. Courts "have

liberally interpreted the address requirement for a valid QDRO in light of its purpose as an aid [to] plan administrators in identifying and locating alternate payees under a QDRO." *Stewart*, 207 F.3d at 1151 (alteration original). The first statutory requirement is satisfied.

The next requirement is that the DRO specify "the amount or percentage of the participant's benefits to be paid by the plan to each such alternate payee, or the manner in which such amount or percentage is to be determined." 29 U.S.C. § 1056(d)(3)(C)(ii). The SGJ specifies that "[Mr. McAlister] shall immediately obtain and maintain a life insurance policy on [his] life with face value coverage of not less than $100,000.00 in full force and effect naming the child or children as primary beneficiary or beneficiaries." SGJ at 7-8. This requirement is satisfied.

Third, the DRO must specify "the number of payments or period to which such order applies[.]" 29 U.S.C. § 1056(d)(3)(C)(iii). Life insurance is customarily paid in a single lump sum, and the SGJ here does not specify otherwise. Accordingly, this requirement is satisfied. *Stewart*, 207 F.3d at 1152 ("because no periodic payments were contemplated, there was no need . . . to determine the number of payments affected by the order").

Finally, the DRO must specify "each plan to which such order applies." 29 U.S.C. § 1056(d)(3)(C). In *Hartford Life & Accident Ins. Co. v. Valois*, the legal separation agreement ("LSA") at issue only mentioned "a policy of life insurance". No. 23-3286, 2024 WL 4678055 (9th Cir. Nov. 5, 2024) (unpublished). However, because "the decedent had but one such policy—the one under the Hartford Plan," . . . [t]he LSA clearly require[d] the decedent to name E.K. as the sole beneficiary on that policy." *Id.* Holding, "where it is clear which plan is implicated, the LSA substantially complies with ERISA's specificity requirements and is a QDRO." *Id.* Here, the SGJ required Mr. McAlister to obtain and maintain a life insurance policy

for the benefit of his children. SGJ at 7-8. MM has not presented evidence of another life insurance policy which this provision in the SGJ could possibly refer to. A plan administrator would therefore have no difficulty determining that the SGJ refers to the Securian Plan and that the funds should be distributed to McAlister's minor child RM.

The Court finds that the SGJ substantially complies with the requirements of § 1056(d)(3)(C) and that the remaining requirements of § 1056(d) are met. The SGJ is a QDRO as a matter of law.

### III. Requested Relief

The Securian Plan has a balance of $53,307.15. DM requests a total of $25,030.08, which can be broken down into three parts: First DM requests the child support arrears that Mr. McAlister owed at the time of his death, $6,930.08. DM's Cross-Mot. at 12; DM's Cross-Mot. Ex. 1 (ECF No. 64-1). Second, DM requests the child support that would accrue and be owed to RM through her eighteenth birthday, $13,750.00. *Id*. Last, because RM will turn eighteen before graduating high school, DM requests the child support accruing between RM's eighteenth birthday and the termination of her high school education, $4,350.00. *Id.*

MM argues that any child support owed to RM past the date of Mr. McAlister's death is unwarranted because child support in Oregon ends at the death of the obligor. Citing *Streight v. Streight's Est.*, 226 Or. 386 (1961).

*Straight's Estate* regarded a claim against the estate which would have circumvented the testator's intent. *Id.* at 390. The Oregon Supreme Court held that "on the death of a parent who has been ordered to make payments for the support of a child such order terminates automatically with respect to payments which would have accrued after such death." *Id.* The Oregon Supreme Court explained that "the long-established right of [the] testator to make an

unrestricted disposition of his estate" takes priority *unless* the child support order "in effect ordered that the payments shall not be affected by the parent's death." *Id.* (emphasis added).

*Straight's Estate* is consistent with the circumstances presented here and cuts against MM's argument. The SGJ ordered Mr. McAlister to make monthly child support payments until the child turned eighteen years old, or if the child was still in school, then until she turned twenty-one years old.² SGJ at 6. The SGJ required Mr. McAlister to maintain a life insurance policy "until all child support under this Judgment has been fully paid[.]" *Id.* at 7. The SGJ states that "[a] constructive trust is imposed over the proceeds of any insurance owned by [Mr. McAlister] at the time of [his] death . . . if said insurance is in force, but another beneficiary is designated to receive said funds." *Id.* at 8. The life insurance clause of the SGJ only becomes relevant in the event of Mr. McAlister's death. It ensures that his eligible children continue to receive support, regardless of Mr. McAlister's intended disposition of his estate. In effect, the SGJ ordered that Mr. McAlister's payments shall not be affected in the event of his death.

Mr. McAlister violated the SGJ by falling behind in his child support payments, by waiting until 2023 to obtain a life insurance plan, by maintaining a plan under $100,000 in value, and by naming MM as the beneficiary to that plan. MM argues that DM failed to timely seek

---

² The "Money Award for Child Support" section in the SGJ states that from June 2020 and on, Mr. McAlister:
> shall pay to [DM], and [DM] shall have a money award for child support against [Mr. McAlister], in the amount of $641.00 per month as and for the support of the parties' minor children and the first of such payments shall be due on the 1st day of June, 2020, and shall continue on the same day each and every month thereafter until said child shall attain the age of eighteen (18) years, or so long as a child qualifies to receive support pursuant to the provisions of ORS 107.108 and other applicable statutes."

SGJ at 6. Under Or. Rev. Stat. § 107.108, a child can continue receiving child support after turning eighteen if the child is under 21 years of age and is still attending school.

enforcement of the SGJ. The Court disagrees. Mr. McAlister's failure to comply with the SGJ, does not relieve him of the obligations ordered therein. Neither does his untimely death, which in effect was contemplated by the SGJ. MM fails to present evidence creating a dispute of fact that Mr. McAlister owed $6,930.08 in arrears, that RM would have accrued $13,750.00 in child support payments through her eighteenth birthday, or that RM would have accrued $4,350.00 in child support payments after turning eighteen while still attending school. On behalf of her minor child RM, DM is entitled to the requested relief of $25,030.08 from the Securian Plan. The remaining balance shall be distributed to MM, the named primary beneficiary.

## CONCLUSION

For the reasons above, MM's Motion for Summary Judgment (ECF No. 63) is DENIED. DM's Cross-Motion for Summary Judgment (ECF No. 64) is GRANTED. Within fourteen days of this Opinion and Order, DM is Ordered to (1) submit a proposed Judgment and (2) file a motion to withdraw funds consistent with LR 67-3.

DATED this 21st day of February 2025.

s/ Mustafa T. Kasubhai
MUSTAFA T. KASUBHAI (He / Him)
United States District Judge